Good morning, Your Honor. Please support Karen Larson on behalf of Mr. Molina, and I would like to reserve some time for a rebuttal. Your Honors, we want our jury verdict back, or at least a new trial. I think the judge in this particular case tried very hard to implement proper jury instructions and so forth, but I think by ignoring the response to question number six, she ignored the obligation of a judge as set forth by this court in different cases, even in Floyd v. Lloyd. She may have been able to ignore maybe three, but six, the jury was not told to ignore question six. They came back with a response, and right before the jury returned with a verdict, certainly Your Honor, you'll be the first one who ever said I spoke too softly. I think that jury note number four, concerning special instruction number 24, was a clear signal that the jury intended to award damages, and that they found liability against the defendants. In fact, instruction 24 states, you must award damages if you find for the plaintiff. Looking at Gallick and what this court has also done in Duck v. MGM, that you can't just throw out a jury verdict when there's substantial evidence consistent with that, which the judge even recognized. On the record, you see the attorneys and the judge all arguing as to whether 24 put a limit on whether the jury was concerned about that item number one was asking the jury to limit damages up to the date of trial or whether they were allowed to go beyond that. Well, coincidentally, the jury resolved it by saying four years from the time of his termination in October 1999 up to the date of the trial, November 19th was the return of the verdict, or the 18th of 2003, it was I understand. When the verdict came in, the judge recognized the possible inconsistency, and he put it up to the lawyers to agree on some further instruction. Is that right? Yes, Your Honor. When the lawyers couldn't agree, then he did nothing. Is that right? That's correct, Your Honor. Did the judge, under the circumstances, however, have the obligation to correct the inconsistency whether the lawyers agreed or not? Exactly, Your Honor. I don't want to be too harsh on the judge, but she is the judge, and she's an excellent judge, and I think she, with all due respect, she pulled under these circumstances. I think her role, she was trying to be pleasant, she was trying to be very fair, but she failed to exercise her responsibility as a judge. It is her duty to harmonize an inconsistency, particularly where in this case, she herself felt that there was significant evidence for the damages, that the jury was signaling they wanted to award damages, and had, and Gallick says, you can't just throw out, because my client's construed Floyd v. Laws and ignored Gallick by saying, I'm going to throw this out on technicality. That's not what Floyd v. Laws is saying, or any of the cases. They're saying, if you can harmonize the inconsistencies, and I think... How can you harmonize it? If you take number two as establishing that the affirmative defense has been established, then you don't have damages, right? No, because you have six. Six is the damaged question. Yes, Your Honor. Right, that's what I'm saying. If you have established that there's an affirmative defense, which precludes liability, then how can you answer six and award damages? Because under any of the cases before the court, the only time that you stop and throw out everything else after two is when there's a clear stop here and do not answer the following questions. What I'm saying is I don't understand how two and six can coexist. Well, then it might be fatal inconsistency, and then we need a new trial. Okay, well, she determined that two was what they intended to do. She determined, she asked them, is this what you want? And she said, yes. She reasoned that two was their answer and that the rest was surplusage. That was an incorrect. She didn't. Says who? Well, besides me, but... I mean, that's what Floyd v. Laws seems to say, doesn't it? No, I totally disagree, Your Honors. And I think I pretty much said that forth in reply. Floyd v. Laws doesn't say that a judge, I mean, all that Judge Snyder did was turn it back to the jury and say, is this your answer? Well, of course they said it was our answer. I mean, you know, that was like a no-brainer. The question was, there's some inconsistency. The Gallick interpretation of Floyd v. Laws had interpreted number two from a lay perspective. Yeah, let me see here. You started off in the beginning. If there was any evidence that he had been fired anyway, which there was, but there's no showing at what point he'd been fired. And I gather you're saying, well, it could be consistent with the damages on the basis he would have been fired four years later, because they gave him four years of damages. Yes, Your Honor. Plus, there was so much evidence of hostility. We asked this jury, I mean, this verdict form was kind of a mishmash of general and a special. I can't figure out what it is, okay? And we all tried to decide it late into the trial. On the last day, the day before closing argument, we're trying to figure out the special verdict. There was 10 minutes left. And so the jury saw the inconsistency, because in their mind, this government so hated Mr. Molina, there was so much hostility, that they were going to get rid of him regardless of what the issue was. I mean, that's how they viewed it. I mean, that's clear. Just the fact that they awarded the damages, what they were thinking. If you look at Special Instruction 24, I mean, look at the evidence. You have these people coming up and say, grand jury? Who cares about the grand jury? Let's blow that off. We know how the average juror in America feels about blowing off a grand jury. I mean, Mr. Libby is learning that the hard way, okay? Oh, an audit that doesn't consider the debt? Oh, that's okay. Oh, sure. Jurors, as taxpayers, say, yeah, let's not consider the debt and, you know, and. Let me stop you here and take you back to reality. In the special interrogatories, they found substantial and a motivating factor for that question. If it's substantial and a motivating factor, would the decision that they would have fired anyway override this language? Substantial and motivating? I agree. I mean, I'm looking at it from a layperson that they intended. In other words, they're not looking at it that number two was an affirmative defense that was a legal bar as your honor, okay? They were looking at that this man was wronged, that he was more or less a whistleblower, that he was terminated because of his free speech and he sustained damages. I don't think it was clear in their mind that question number two, the ramifications, was that if they said, yes, he would have been fired anyway, the defendants go home free. Well, they don't have to know the ramifications. They just have to answer the question. It's for the judge to decide what the ramifications of those answers are. If, okay, if that's the case, and you're speaking of the issue of a general verdict form, then there should have been more law instructing the jury as to, that's true, your honor, but I think that the better way of doing it, and I don't think the cases disagree, is to give them some idea of what the ramifications are. I mean, certainly the jury has to know by the judge that by ruling by number two, they're throwing the case out, don't they? That's a different argument than the one you're making in the brief. You didn't you're not quarreling with the instructions that were given. No, except for my thing that I wanted to add, the pretextual issue, because I thought this was clearly a case of pretextual, and I also thought that motivating factors should have been defined, but either way, I think the jury found for my client, I think number six. Excuse me, I didn't mean to interrupt. You said you wanted to reserve some time. Oh, okay. Then I will. Do you want to finish your sentence? I think it's pretty predictable what I'm saying. Thank you, Ms. Larson. Good morning. Good morning. May it please the Court, Your Honors. My name is Steven Katz on behalf  of the Panel. I'm going to speak into the microphone. I'm sorry, Your Honor. There's a crucial Excuse me. Put the mic up. There is a crucial consideration here that the foregoing discussion hasn't brought into bear. It resolves many of the concerns the panel has. The finding on special interrogatory number two that the appellant would have been terminated regardless of the exercise of his First Amendment rights. He would have been terminated anyhow. Is an affirmative defense to his case in chief that requires a finding that his exercise of First Amendment rights is substantial and et cetera? Maybe what the jury was thinking, they would have found a way to fire him. It could have been another illegal action on their part. Because there was hostility, they would have found a way to fire him. Maybe that's what they thought. I have to concede, Your Honor, maybe that's true. Maybe it's true that all of the jurors were suffering from mental defects and hallucinating. It is a possibility, but it's not a reasonable possibility based on the record. Well, if you have to harmonize the verdict, maybe that's one way to harmonize it. That could be a way to harmonize it if you had to harmonize it. However, as a matter of law, you do not. And the foundation for that conclusion is this distinction between an affirmative defense and a contradiction in the findings that go to a plaintiff's cause of action. In Gallick, in Floyd, and in Duke, the inconsistency, and let me put that word in scare quotes for a moment and I'll explain why, the inconsistency is between factual findings that go to the plaintiff's cause of action. For instance, an inconsistency between a finding that the plaintiff has suffered no damage, meaning no injury in that context, and a finding that the plaintiff is entitled to recover money. That is an inconsistency that goes to a cause of action if you were an alternate endpoint in the deliberations of a jury in entering a judgment. An affirmative defense stands conceptually as something different. Affirmative defenses and the plaintiff's cause of action are always inconsistent. That's what it means to call it an affirmative defense. You don't reach the affirmative defense unless the plaintiff has made out a cause of action. It simply drops from the equation. I'm sorry, Your Honor. At least a prima facie case. At least a prima facie case. But there's also no inconsistency with finding that a plaintiff has made out their ultimate cause of action and an affirmative defense on a special verdict. One of the things that bothers me is would he have been fired in any event? That leaves it open. When would he be fired? What struck me in this case is they awarded the plaintiff four years actually of damages. Now, if they answered interrogatory number two in the negative, so you lost, the damages could have been horrendous, a whole lot more. I think maybe that's what they were thinking. We'll give this guy something, but not everything. Isn't it a fact that in the damage arguments, the plaintiff asked for a lot more money than 500? That is correct, Your Honor. And that could be a way to harmonize the verdict if the verdict required harmonization. However, that's a... I'm sorry, Your Honor. Let me tell you a little story. Justice Douglas used to tell a story that Justice Black loved, and that was this. This fellow was tried for stealing a mule. They came in with a verdict and said, not guilty, but he's got to give the mule back. And the judge said, well, no, that's inconsistent. You can't do that. Go back and deliberate some more. So they went back and they said, well, it's not guilty, and he can keep the mule. So that was... You knew then what the jury wanted to do. We know here that the jury wanted to give damages. Well, no, Your Honor, we don't. And I'll tell you why we don't. Because the jury verdict form, one, did not submit a general verdict to the jury. Two, the form perhaps should have, but did not include in its stop here language, an express instruction not to reach question six, in which they assigned an amount of money, a value, to the cause of action that they found to have been established based on their answer to interrogatory number one. But we do have something significant here. Interrogatory number three answers yes to the question of whether there has been injuries suffered in light of the finding on one. The stop here instruction attached to two says if you answer... In fact, let me quote it. If the answer to number two is yes, which it was, do not answer number three. A special verdict form which contains answers contrary to the express stop here instruction of the court requires the court to treat the improperly addressed questions as mere surplusage. How do we know which one they answered by mistake? How do we know they didn't intend to say no to two and yes to three? Because the trial court specifically polled the jurors to determine whether or not the entire juridic form... She just said, is this what you intended to do? She didn't point out to them, look, there's a problem. You answered yes to two and you answered yes to three. You can't answer both yes to... Go back and let us know which one is the correct one. That is correct because she was concerned and articulated this on the record that she had no suggested way to do it that was not susceptible to be interpreted by the jury as a nod and a wink and an invitation to nullification. I don't understand that. Why couldn't she say, look, go back and read the instructions, two and three can't coexist as you've answered them. Change your answer to two or change your answer to three, but go fix it. Well, she could have, but there is the risk I just articulated. I suppose there's a debate about how severe the risk is. But she perceived there to be a risk. What's the risk? The risk is that jurors will take that as an indication that you need to rework your conclusions to reach a particular end result. The end result... As long as she doesn't tell them what the result is, it's their result that we're interested in. Well, it's certainly not a zero risk, Your Honor. I'm not suggesting that the risk is inherent and immediate and every juror would respond to it that way, but it's a risk. But regardless of the quantum of the risk, she was presented with a set of responses to special interrogatories. No general verdict, no general verdict with interrogatories, simply a series of factual propositions to the jury. The propositions, the factual propositions themselves were not inconsistent. It is simply not inconsistent on the one hand to say the plaintiff established a cause of action and you can calculate and award an amount of money to compensate the plaintiff based on that cause of action and yet also conclude that an affirmative defense has been made out. Faced both with that lack of... Were you a trial attorney? No, I was not, Your Honor. Well, looking at from what I see, it's pretty obvious to me that your side, the other side, and the judge didn't think the verdict was... had no inconsistency. They all felt there was an inconsistency and your side tried to find a way to do it, which was unsatisfactory to the other side. The other side tried to find a way to do it, which was unsatisfactory to your side and the judge threw up her hands. No, Your Honor. Let me suggest the record should be interpreted in a slightly different way. What it showed certainly is that there was a problem. The problem was that the jury ignored an explicit stop here instruction and after discussing various possibilities on how to deal with the problem, the trial court decided that what she needed to determine was whether or not the form was correctly filled out and represented the verdict of the jury and if that was established, then it became a matter for her to review and interpret the special verdict form and apply the factual findings to the applicable law. At the end of the day, the jury found... Is that in the record where the judge said, this is why I'm doing this? Yes, Your Honor. I believe the trial transcript has been cited in the papers. The trial court said, well, I can't agree and so all she did was call in the jury and say, is this your verdict? Well, I don't think... Did you answer this? One, did you answer this? Of course, they did. It didn't solve anything. It was suggested, Your Honor, that that's not quite the best interpretation of the trial judge's actions. Her actions were not in the absence of agreement. I can do nothing but having indulged colloquially with counsel, including appellant's counsel, urging their construction of the events. The judge decided that the best course of action was simply to affirm that the jury, the special verdict form reflected the answers to the questions posed as the jury intended and that thereafter, it was her job as a matter of law to apply those answers to the law to determine what the ultimate outcome of the case was. Finally, Your Honors, I would like to point out that Gallick is not a helpful case under these circumstances for the reasons I've articulated. There is always a contradiction between affirmative defenses and the plaintiff's case in chief or a cause of action. Without the sort of inconsistency that invokes the rule of Gallick, one could never safely employ a special verdict form where there are affirmative defenses. Such a contradiction, the potential for contradiction there is virtually inherent. Unless Your Honors have any further questions, I'm prepared to submit. Thank you, Mr. Cass. Thank you, Your Honor. Ms. Larson, you have about a minute left. Take me a minute just to get up here, Your Honor. I don't understand their argument, but let me just get to the point here. The cases clearly say that you can't ignore a legitimate part of the verdict. Number six is a legitimate part of the verdict. There is no way you can throw that out. The jury awarded damages. It's interesting for appellate counsel to interpret everything as to going on. I think Your Honors have it correct as to in the heat of the battle, before the jury returned the verdict, the record is clear. Everyone assumed that damages had been awarded because the jury came back with questions on number 24. Do we award damages up to today, and do we have to stop to today? So that was the whole discussion. When the jury came back with that inconsistency, their sharp trial attorney saw an opportunity to get this case thrown out on a technicality. The judge wasn't even thinking of Floyd v. Loss. What's the technicality, Your Honor? The technicality of number two is an affirmative defense. That's more than a technicality, isn't it? Isn't that an absolute defense if it's established? No, it is only a technicality in light of periodic because the jury didn't understand it as an affirmative defense. The judge didn't say, I'm interpreting it as an affirmative defense, and that there was an answer six. If the jury had ruled that there were no damages, okay. If the judge had ruled do not answer question six if you answer no to two, then we would have a situation of Floyd v. Loss. But even in Floyd v. Loss, they interpreted to attempt to harmonize the verdict that the jury intended. Everyone in that courtroom, when that jury returned the verdict, knew it had intended to award damages. Everyone. And to suggest that after all these years and all this time, we can throw it out because of a narrow interpretation of two that the jury didn't intend is nuts. The judge didn't know she was concerned. She should have made an attempt to harmonize, saying to the jury, is this your verdict? Jury has no clue what the heck she's talking about. What are they supposed to say? No? Thank you, Ms. Larson. Thank you, Mr. Katz. The case, as argued, is submitted. Good morning.
judges: Bright, B.fletcher, Silverman